Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNY LEE,<br><br>    Plaintiff,<br><br>    v.<br><br>INNERWORKINGS, INC., RICH STODDART, JACK M. GREENBERG, CHARLES K. BOBRINSKOY, LINDSAY Y. CORBY, DAVID FISHER, ADAM J. GUTSTEIN, JULIE M. HOWARD, KIRT P. KARROS, and MARC ZENNER,<br><br>    Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Kenny Lee ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### **NATURE OF THE ACTION**

1.  This is an action against InnerWorkings, Inc. ("InnerWorkings" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9,

1

in connection with the proposed acquisition (the "Proposed Transaction") of InnerWorkings by HH Global Group Limited ("Parent" or "HH Global"), HH Global Finance Limited ("HH Finance"), a direct holding company of Parent, and Project Idaho Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Parent.

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company has offices in New York City.

5.  In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.  Plaintiff is, and has been at all relevant times hereto, an owner of InnerWorking's common stock.

7.  Defendant InnerWorkings provides marketing execution solutions in the United States, Canada, the United Kingdom, continental Europe, the Middle East, Africa, Asia, Mexico,

Central America, and South America. The Company is incorporated in Delaware and has offices in New York City. The Company's common stock trades on the Nasdaq Global Select Market under the ticker symbol, "INWK."

8.  Defendant Rich Stoddart ("Stoddart") is Chief Executive Officer, President, and a director of the Company.

9.  Defendant Jack M. Greenberg ("Greenberg") is the non-executive Chairman of the Board of the Company.

10. Defendant Charles K. Bobrinskoy ("Bobrinskoy") is a director of the Company.

11. Defendant Lindsay Y. Corby ("Corby") is a director of the Company.

12. Defendant David Fisher ("Fisher") is a director of the Company.

13. Defendant Adam J. Gutstein ("Gutstein") is a director of the Company.

14. Defendant Julie M. Howard ("Howard") is a director of the Company.

15. Defendant Kirt P. Karros ("Karros") is a director of the Company.

16. Defendant Marc Zenner ("Zenner") is a director of the Company.

17. Defendants Stoddart, Greenberg, Bobrinskoy, Corby, Fisher, Gutstein, Howard, Karros, and Zenner are collectively referred to herein as the "Individual Defendants."

18. Defendants InnerWorkings and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

19. On July 16, 2020, InnerWorkings and HH Global announced that they had signed a definitive agreement to combine operations. Under the terms of the agreement, HH Global would acquire InnerWorkings for $3.00 per share in an all-cash transaction. The press release announcing

the merger states, in pertinent part:

### HH Global and InnerWorkings to Create Combined Global Marketing Services Company

*All-Cash Transaction Valued at $3.00 Per Share; Represents 127% Premium to Closing Price and 104% Premium to the 90-Day Volume Weighted Average Price as of July 15, 2020*

*Combined Company to Provide Full End-to-End Marketing Solutions for Clients Across the Globe*

July 16, 2020 08:00 AM Eastern Daylight Time

LONDON & CHICAGO--(BUSINESS WIRE)--InnerWorkings, Inc. (NASDAQ: INWK) ("InnerWorkings") and HH Global Group Limited ("HH Global") today announced that they have signed a definitive agreement to combine operations. Under the terms of the agreement, HH Global will acquire InnerWorkings for $3.00 per share in an all-cash transaction representing approximately $177 million in equity value. This represents a premium of 127% to the closing price, and a premium of 104% to the 90-day volume weighted average price as of July 15, 2020. The transaction has been unanimously approved by the Boards of Directors of both companies.

\*   \*   \*

**Additional Transaction Details**

Under the terms of the merger agreement, HH Global will acquire all of the outstanding shares of InnerWorkings common stock for $3.00 per share in cash which represents a premium of 127% to the closing price and a premium of 104% to the 90-day volume weighted average price as of July 15, 2020.

The transaction is subject to customary closing conditions, including approval by InnerWorkings' shareholders and receipt of certain regulatory approvals, and is expected to be completed before the end of the fourth quarter of 2020.

Citigroup Global Markets Inc. is serving as exclusive financial advisor to InnerWorkings and Sidley Austin LLP is serving as legal counsel. Moelis & Company LLC is acting as HH Global's exclusive financial advisor and Kirkland & Ellis LLP is serving as legal counsel.

**About HH Global**

Founded in 1991, HH Global is a global outsourced marketing execution provider. Applying proven processes, industry-leading technology, and the deep expertise of

4

over 1,300+ employees, we develop innovative solutions that drive down the cost of our clients' physical marketing procurement and content development, while improving quality, sustainability, and speed to market.

**About InnerWorkings, Inc.**

InnerWorkings, Inc. (NASDAQ: INWK) engineers marketing for leading brands across a wide range of industries. We dive deep into clients' brand strategies to deliver solutions that leverage our global expertise, certified supplier base, proven methods, and proprietary technology. By engineering marketing across key touch points in the customer journey, we power campaigns that drive value, enhance awareness and inspire action. With services that include creative, print, direct mail, branded merchandise, luxury packaging, retail environments, and digital solutions, we're elevating beyond execution to shape brand experience. For more information visit: www.inwk.com.

20. The merger consideration represents a 48% discount from the Company's closing stock price of $5.79 per share on January 8, 2020.

21. On August 10, 2020, Defendants caused to be filed with the SEC a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

22. The Proxy Statement, which recommends that InnerWorkings shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (1) InnerWorkings's financial projections; (2) the financial analyses performed by InnerWorkings's financial advisor, Citigroup Global Markets Inc. ("Citi"), in connection with its fairness opinion; and (3) potential conflicts of interest involving Citi.

23. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Board; (ii) Reasons for Recommending the Adoption of the Merger Agreement; (iii) Forward-Looking Financial Information; (iv) Financial Projections; and (v) Opinion of the Company's

Financial Advisor.

24. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote, InnerWorkings shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning InnerWorkings's Financial Projections

25. The Proxy Statement omits material information concerning InnerWorkings's financial projections.

26. The Proxy Statement provides that, "in connection with the Company's evaluation of potential financing alternatives and strategic alternatives and following the end of the first quarter, the Company's management prepared forward-looking financial information with respect to fiscal years 2020 through 2024" (the "Management Projections").

27. The Company's management prepared the Management Projections

> (a) by estimating the Company's results for the remainder of 2020 taking into account the Company's results through May of 2020 and the cost savings and other COVID-19 related measures implemented by the Company (as well as the impact of such measures) and (b) assuming the decline in the Company's revenues reached its lowest point during the second quarter of fiscal year 2020 and the Company's revenue for existing clients returned to that contemplated in the Company's original pre-COVID-19 2020 annual operating plan (we refer to the Company's pre-COVID-19 2020 annual operating plan as the "Original AOP") for the fourth quarter of 2020 by the fourth quarter of 2022.

28. The Management Projections were "provided to the Board, to potential bidders that were in the process at that time, including Parent, and to the Company's financial advisor, Citi, for its use and reliance in connection with its financial analyses and opinion[.]"

29. The Proxy Statement, however, fails to disclose the following concerning the

Management Projections: (1) the Company's net income projections and all underlying line items;; and (2) a reconciliation of all non-GAAP to GAAP metrics.

30.  Further, the Company's original pre-COVID-19 2020 annual operating plan and all underlying line items (the Original AOP) which was approved in February 2020 must be disclosed. This information is material to the Company's shareholders because the Company relied upon this information to prepare the Management Projections. It is also material to the Company's shareholders because, *inter alia*, it will enable them to (i) understand the Management Projections and compare the Management Projections to the Company's prior, more positive financial outlook, (ii) analyze the Company's future financial performance, and (iii) judge whether any adjustments to the Company's financial projections was reasonable.

31.  When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[1]

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Aug. 20, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures

32. The disclosure of the aforementioned projected financial information is material because it would provide InnerWorkings shareholders with a basis to project the future financial performance of InnerWorkings and would allow shareholders to better understand the financial analyses performed by InnerWorkings's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by InnerWorkings and its financial advisor, InnerWorkings shareholders are unable to determine how much weight, if any, to place on the Company's advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

33. Accordingly, in order to bring the Proxy Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of InnerWorkings's financial projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Proxy Statement not misleading.

34. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to InnerWorkings shareholders.

### 2. Material Omissions Concerning Citi's Financial Analyses

35. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning Citi's financial analyses.

---

misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

36. The Proxy Statement fails to disclose the following concerning Citi's "*Discounted Cash Flow Analysis*": (1) all line items underlying the Company's stand-alone unlevered, after-tax free cash flows; (2) the implied terminal values for the Company; and (3) the individual inputs and assumptions underlying the (i) perpetuity growth rates of 3.0% to 4.0%, and (ii) discount rates of 13.0% to 15.2%, and of 15.7% to 18.8%.

37. With respect to Citi's analysis of research analysts' stock price targets for InnerWorkings common stock, the Proxy Statement fails to disclose: (1) the individual price targets for InnerWorkings observed by Citi in its analysis; and (2) the sources of those price targets.

38. With respect to Citi's analysis of selected companies in the print and business process outsourcing industry and in the marketing services industry, the Proxy Statement fails to disclose: (1) the identity of each company Citi utilized in its analysis; and (2) the individual multiples and the financial metrics of each company.

39. The valuation methods, underlying assumptions, and key inputs used by Citi in rendering its purported fairness opinion must be fairly disclosed to InnerWorkings shareholders. The description of Citi's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, InnerWorkings shareholders are unable to fully understand Citi's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to InnerWorkings shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Citi

40. The Proxy Statement omits material information concerning potential conflicts of interest involving Citi.

41. The Proxy Statement provides that "Citi and its affiliates in the past have provided and in the future may provide investment banking, commercial banking and other similar financial services to the Company unrelated to the proposed merger, including, during the approximately two-year period prior to the date of Citi's opinion, having provided financial advisory services in respect of certain potential transactions that were not consummated."

42. The Proxy Statement, however, fails to disclose the amount of compensation Citi received or expects to receive from InnerWorkings in connection with the financial advisory services Citi provided to InnerWorkings for "certain potential transactions that were not consummated."

43. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

44. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to InnerWorkings shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

45. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of

10

the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

47. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

48. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

49. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

50. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

51. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy

Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

55. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 20, 2020                    Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
              zhalper@halpersadeh.com

*Counsel for Plaintiff*